IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02609-KLM

QUOC NGUYEN,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

     Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record**

[#10],[2] filed January 30, 2014, in support of Plaintiff's Complaint [#1] seeking review of the

decision of Defendant Acting Commissioner of the Social Security Administration

("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income

benefits pursuant to 20 C.F.R. § 416 ("Title XVI") of the Social Security Act, 42 U.S.C. §§

401-433 (the "Act") and disability insurance benefits pursuant to 20 C.F.R. § 404 ("Title II")

of the Act.  On May 23, 2014, Plaintiff filed an Opening Brief [#16] (the "Brief").  On July 31,

2014, Defendant filed a Response  [#22] (the "Response").  The Court has jurisdiction to

_____

[1]  The parties consented to proceed before the undersigned for all proceedings pursuant
to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See generally Consent Form* [#29]; *Plaintiff's
Explanation For Apparent Conflict Between Two Magistrate Consent Forms* [#31].

[2]  "[#10]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF).  This convention is used throughout this Order.

review the Commissioner's final decision under 42 U.S.C. § 405(g).   The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.   For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I. Factual and Procedural Background

Plaintiff alleges that he became disabled on June 18, 2009.  Tr. 13, 169, 176.[3]   On June 17, 2010[4], Plaintiff filed for Title II disability insurance benefits and Title XVI supplemental security income.  Tr. 169-83.  Born on August 2, 1964, Plaintiff was 44 years old, defined as a younger individual, on his alleged onset date.  Br. [#16] at 6; Tr. 169.  On April 10, 2012, a hearing was held before Administrative Law Judge Lowell Fortune (the "ALJ").  Tr. 38-65.  On May 3, 2012, the ALJ entered his Decision, finding that Plaintiff was "not disabled under sections 216(i) and 223(d) of the Social Security Act."  Tr. 29.  Plaintiff appealed to the Appeals Council, which denied his request for review of the ALJ's decision.  Tr. 1-7.  Therefore, the ALJ's decision became a final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981, 422.210(a).[5]

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 10-1, 10-2, 10-3, 10-4, 10-5, 10-6, 10-7, 10-8, and 10-9, by the sequential transcript numbers instead of the separate docket numbers.

[4]  The ALJ and the parties agree that Plaintiff applied for benefits on June 17, 2010.  Tr. 13; Br. [#16] at 6; Resp. [#22] at 2.   The Disability Determination and Transmittal form states that Plaintiff's "filing date" was June 17, 2010.  Tr. 66.  In addition, the records refer to a June 17, 2010 application date.  *See, e.g.*, Tr. 194, 209-10.  However, the records reflect that Plaintiff applied on July 13, 2010 and that "no previous application [was] filed with the Social Security Administration by or for" Plaintiff.  Tr. 169, 176.  Further, the record does not include an application dated June 17, 2010.  However, because the application date is not material to any of the issues addressed below, the Court will not attempt to resolve this discrepancy.

[5]  Throughout this Order, although I cite to relevant sections of Part 404 of title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability

When reaching his decision, the ALJ made several determinations. The ALJ determined that, Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2014." Tr. 15. The ALJ further found that Plaintiff "has not engaged in substantial gainful activity since June 18, 2009, the alleged onset date . . . ." Tr. 15. The ALJ determined that Plaintiff "has the equivalent to a 10th grade education and is able to communicate in English." Tr. 18. Regarding Plaintiff's alleged disabilities, the ALJ found that he "has the following impairments that are medically determinable and 'severe': adjustment disorder; posttraumatic stress disorder; neck pain, back, and shoulder pain; headaches; effective disorder; and anxiety disorder . . . ." Tr. 15. However, the ALJ noted that

> there are some qualifications and/or conditions to the impairments stated above. The impairment of headaches is only questionably medically determinable. That is, the evidence of medical determinability is questionable at best. Consequently, some of the impairments stated above will not require or result in a correlative functional limitation in the claimant's residual functional capacity.

Tr. 15. The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 16. After reviewing the information in the record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC")

> to perform a full range of light work with the following exceptions. The [Plaintiff] must never climb ladders, ropes, or scaffolds. The [Plaintiff] is unable to extend the neck for prolonged periods of time. The [Plaintiff] must never reach overhead. The [Plaintiff] must never be exposed to unprotected

---

insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

heights.   The [Plaintiff] is unable to perform assembly-line work.[6]   The [Plaintiff] cannot engage in work requiring hyper-vigilance.[7]  The [Plaintiff] is able to have frequent contact and/or interaction with the public and coworkers.

Tr. 14.   Based on the RFC and the testimony of Pat Paulini (the "VE"), an impartial vocational expert, the ALJ found that Plaintiff "is capable of performing past relevant work as a[n] electronics assembler and manicurist."  Tr. 28.  The ALJ explained: "This work does not require the performance of work-related activities precluded by" Plaintiff's RFC.  Tr. 28. He therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 29.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall*

---

[6] "Assembly-line work" refers to employees working side-by-side in an assembly line in such a manner that the work of one affects the work of others down the assemble line. (footnote in original).

[7] Hyper-vigilant work means work that requires intense, sustained concentration.  Two job examples are lifeguard and air traffic controller. (footnote in original).

*v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.    42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision of the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues de novo.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*"  *Oldham v. Astrue*,

509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration ("SSA") uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)); 20 C.F.R. § 404.1520(a)(4)(i).  If not, the ALJ considers at step two, whether a claimant has "a medically severe impairment or impairments." *Id.*; 20 C.F.R. § 404.1520(a)(4)(ii).  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Id.* (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Id.* (quoting *Allen*, 357 F.3d at 1142); 20 C.F.R. § 404.1520(a)(4)(iii).  Before reaching step four, the ALJ is required to determine the claimant's RFC.  20 C.F.R. § 404.1520(a)(4)(iv).  An RFC represents "the most [a claimant] can still do despite his limitations."  20 C.F.R. § 404.1545(a)(1); *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988) (noting that the RFC

is "the claimant's maximum sustained work capability"). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent h[im] from performing h[is] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142); 20 C.F.R. § 404.1520(a)(4)(iv). "Even if a claimant is so impaired, the agency considers, at step five, whether [ ]he possesses the sufficient [RFC] to perform other work in the national economy." *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying him disability insurance benefits and supplemental social security income benefits.  Br. [#16] at 1. Plaintiff brings four challenges to the ALJ's findings.  First, Plaintiff argues that the ALJ "erred by failing to correctly apply the 'Treating Physician Rule' to the medical evidence of [Plaintiff's] mental and physical impairments."  Br. [#16] at 5, 15-18.  Second, he argues that "the ALJ's credibility determinations are based on irrelevant factors and incompetent evidence and therefore constitute an abuse of [his] discretion."  *Id.* at 5, 18-20.  Third, Plaintiff argues that the RFC the ALJ assigned in this case "is not based on substantial evidence and fails to address all the limitations resulting from his severe and non-severe impairments."  *Id.* at 5, 20-21.  Finally, he argues that "the ALJ erred by concluding that [Plaintiff] could perform his past relevant work when that work requires skills and abilities that are restricted in [Plaintiff's] RFC and the ALJ made insufficient findings of fact to support this conclusion."  *Id.* at 5, 21-23.  The Court will address each of these arguments in turn.

### A.    The ALJ's Consideration of Dr. Aylesworth's Opinion

Plaintiff argues that "Dr. Aylesworth was a treating physician" and "the ALJ failed to make findings with respect to four of the six factors relevant to the weight to be given that evidence, and [ ] the findings that [the ALJ] did make, at least in part, directly contradicted the evidence in the record . . . ."  Br. [#16] at 18.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner.  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *White v. Barnhart*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2001).  However, the conclusions

reached by the ALJ must be reasonable and consistent with the evidence. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Id.* (citing 20 C.F.R. §416.927(e)(2)(ii)). Regardless of whether a doctor is a treating or nontreating professional, all medical opinions must be weighed as outlined in 20 C.F.R. § 416.927(c). This provision requires an ALJ to consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area in which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §416.927(c). Notably, the ALJ need not discuss each individual factor. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation marks, internal brackets, and citation omitted).

Generally, treating physicians' opinions are given controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Pursuant to the Act, the "opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th cir. 2003) (brackets in original). As the Tenth Circuit has explained:

> The treating physician's opinion is given particular weight because of his "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2). This requires a relationship of both duration and frequency. "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis added). . . . . Moreover, a longstanding treatment relationship provides some assurance that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits.
>
> . . .
>
> A physician's opinion is deemed entitled to special weight as that of a "treating source" when he has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," taking into consideration "the treatment the source has provided" and "the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.*

*Doyal*, 331 F.3d at 762-63.

In this case, the ALJ provided a very thorough analysis of the medical evidence he considered when determining Plaintiff's RFC. Tr. 19-29. The ALJ discussed the medical

records, Plaintiff's testimony, and the various medical opinions offered in this case. Tr. 19-29. With regard to the medical professionals, the ALJ offered a very detailed discussion of the weight he gave to each opinion and the basis for his decision:

> First, I find that no treating source opinion is entitled to controlling weight over the opinion of any other medical sources in evidence in this claim. . . .

> I give more weight to the opinions of the following medical sources: Dr. Jennings, the consultative examining psychologist [ ], Dr. Mitchell, the consultative examining physician [ ], Stephen Hochberg, LPC, the social worker who examined the claimant in October 2009 [ ], and Khoi D. Pham, MD, the claimant's neurologist [ ]. I believe these opinions are more consistent with the longitudinal record for the reasons that follow.

> I have discussed each of these opinions in detail elsewhere in this decision. Overall, I find that each of these opinions is supported by objective medical facts and findings. Moreover, each of these opinions contains thorough explanations and they are consistent with the record as a whole. Additionally, apart from the medical opinion of Laurence Aylesworth, PhD, which will be discussed below, these opinions are not contradicted by other medical opinions. Therefore, I have afforded significant weight to these opinions.

> Additionally, I have considered the medical opinion that was provided by Mark Dilger, MD, the State agency consulting psychologist [ ]. I find that this medical opinion further supports the opinions that were provided by Dr. Jennings and Mr. Hochberg. Moreover, Dr. Dilger provided a detailed explanation for his findings that was supported by objective medical evidence. Finally, Dr. Dilger is well versed in the disability process. This knowledge combined with his medical expertise makes him exceptionally well qualified to opine on the claimant's mental limitations.

> I give less weight to the opinions of the following medical sources: Laurence Aylesworth, PhD [ ]. I believe these opinions overstate that claimant's functional limitations for the reasons that follow.

> It appears from the medical records that the treating sources accepted at face value the statements made and symptoms reported by the claimant. Indeed, there is nothing in the medical treatment records to suggest otherwise. For example, there is nothing in the medical treatment records to suggest that any treating source conducted any type of validity testing. Nor is there anything in the medical records to suggest that any treating source considered whether or not the claimant's subjective symptoms or self-

reporting were motivated in whole or in part by primary or secondary gain.

. . .

In this case, I have found (as I explain elsewhere in this decision) that the claimant's allegations are not fully credible.  As I have previously explained, full credibility of a patient's self-reporting is an essential element underpinning the opinions and conclusions of treating sources.  Thus in this case, I am unable to give any significant weight to the treating source opinions regarding functional impairment or ability to work, because an essential element of the treating source assessments has been undermined.

The opinions of this treating source are not entitled to controlling weight because they do not satisfy the regulatory requirement that they must be "consistent" with "the other substantial evidence" in the record.[8]  In this case, the Consultative Examiner concluded that the claimant's limitations would not preclude the performance of substantial gainful activity [ ].

Elsewhere in this decision, I mentioned that I assess the credibility of the evidence given by each person.  A credibility factor I consider for any witness is whether the witness may have some prospect of personal or professional gain, whether pecuniary or otherwise, in the outcome of the matter in dispute.  This factor applies to a health care professional as well as a layperson.  The evidence of record suggests that Dr. Aylesworth has a pecuniary interest in the outcome of this disability claim.  The testimony during the hearing and a review of the medical evidence revealed the following information.

Dr. Aylesworth conducted evaluations of the claimant over [ ] four and a half appointments [ ].  He charged the claimant almost $10,000 for this service.  Instead of taking normal payment for his services, Dr. Aylesworth accepted a lien on any awards or settlements that the claimant obtained in relationship to his motor vehicle accident.  The fact that Dr. Aylesworth accepted payment in the form of a lien does not automatically indicate that his opinion was influenced by his pecuniary interest.  However, other aspects of his report undermine the overall credibility of his medical opinion.  When Dr. Aylesworth initially discussed the claimant's results on the Negative Impression Scale of the RNBI Validity scale, he noted that the claimant's Postmorbid Negative Impression Scale was highly elevated [ ].  He further noted that this elevated score suggested the possibility that the claimant had exaggerated an unusually severe pattern of symptoms.  However, when Dr. Aylesworth

---

[8] Typically, the term refers not only to information about past conditions and treatments, but also to information about current symptoms or complaints, current medications, etc. (footnote in original).

> completed his summary of the claimant's condition he noted that the claimant's Postmorbid Negative Impression Scale scores suggested a severe post-accident deterioration in his functioning [ ]. Dr. Aylesworth did not mention the fact that this could also suggest that the claimant was exaggerating his symptoms. This omission in his general summary of the claimant's mental impairments dramatically undermines the credibility of his assessment. Moreover, Dr. Aylesworth was not the claimant's treating source, he was actually retained by the claimant's attorney in an effort to develop evidence for a personal injury claim that the claimant was pursuing.

Tr. 26-28.

Plaintiff argues that the ALJ did not explicitly discuss all six of the factors listed in 20 C.F.R. §416.927(c). Br. [#16] at 18. As explained above, the ALJ need not discuss each individual factor. *See Oldham*, 509 F.3d at 1258. Instead, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (quotation marks, internal brackets, and citation omitted). Here, the ALJ offered several reasons why he gave less weight to Dr. Aylesworth's opinion. These include that this medical opinion was based on statements made by Plaintiff that were not credible, Dr. Aylesworth's opinion may have been influenced by his potential pecuniary gain, and his opinion is contradicted by other substantial evidence in the record. Tr. 26-28.

Plaintiff further argues that the ALJ misunderstood Dr. Aylesworth's opinion regarding whether Plaintiff may have been exaggerating his symptoms, which, according to Plaintiff, is an abuse of discretion. Br. [#16] at 17. In his April 26, 2011 medical notes, Dr. Aylesworth wrote:

> Mr. Nguyen did have a significant elevated Postmorbid Negative Impression Scale, which could have suggested either a severe post-accident deterioration in his functioning or an emphasis on conveying a negative

13

impression of his post accident functioning, i.e., a cry for help.

Tr. 420.   On that date, Dr. Aylesworth later concluded that the pattern of Plaintiff's

Postmorbid Negative Impression Scale scores "suggested that it is likely his high pre-

treatment score . . . was due more to his severe post-accident deterioration in functioning,

rather than an emphasis on conveying a negative impression of his post-accident

functioning."   Tr. 422.

The ALJ did not misunderstand Dr. Aylesworth's words as Plaintiff contends.

Rather, one of the reasons the ALJ gave Dr. Aylesworth's opinion less weight is because,

even though his April 26, 2011 treatment notes explicitly included the possibility that one

explanation for Plaintiff's Postmorbid Negative Impression Scale scores was that he was

exaggerating his symptoms, Dr. Aylesworth did not include the possibility that Plaintiff was

exaggerating his symptoms in his May 4, 2011 Closing Summary.   Tr. 412-15.   As noted

above, the Court may not reweigh the evidence or substitute its judgment for that of the

ALJ and the Commissioner.   *Hackett*, 395 F.3d at 1173.   Here, the ALJ examined the

evidence and reached a conclusion about how much weight to afford Dr. Aylesworth's

opinion after considering the record.   Further, the ALJ offered a clear explanation of the

weight he gave to the opinion and offered "good reasons in the notice of determination or

decision for the weight he ultimately assign[ed] the opinion."   *Watkins*, 350 F.3d at 1301

(quotation marks, internal brackets, and citation omitted).

Plaintiff further contends that Dr. Aylesworth was a treating physician and, therefore,

his opinion should have been given controlling weight.   Br. [#16] at 16-18.   First, to be a

"treating physician," a doctor must have a "longstanding treatment relationship" with the

patient that "provides some assurance that the opinion has been formed for purposes of

14

treatment and not simply to facilitate the obtaining of benefits." *Doyal*, 331 F.3d at 762-63. Pursuant to 20 C.F.R. § 416.927(c)(2), in determining whether a physician's opinion is entitled to controlling weight, the SSA regulations look to the "[l]ength of the treatment relationship and the frequency of examination," and the "[n]ature and extent of the treatment relationship." Here, Dr. Aylesworth initially met with Plaintiff on January 31, 2011. Tr. 433, 465-68. On May 4, 2011, Dr. Aylesworth completed his "Closing Summary" of his evaluation of Plaintiff. During that period, Dr. Aylesworth met with Plaintiff several times. Nevertheless, the ALJ could correctly conclude that Dr. Aylesworth was not a treating physician pursuant to 20 C.F.R.§ 416.927(c)(2) because he met with Plaintiff for fewer than four months. Second, the ALJ concluded that Dr. Aylesworth's opinion was not consistent with other substantial evidence in the record. Tr. 27. As explained in *Doyal*, the "opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Doyal*, 331 F.3d at 761 (brackets in original). Accordingly, even if Dr. Aylesworth was a treating physician, because the ALJ found that his opinion was not consistent with other substantial evidence in the record, the ALJ did not err by refusing to give Dr. Aylesworth's opinion controlling weight.

## B.    The ALJ's Credibility Determinations

Plaintiff also argues that "the ALJ's credibility determinations are based on irrelevant factors and incompetent evidence and therefore constitute an abuse of [his] discretion." Br. [#16] at 5, 18-20. Specifically, Plaintiff argues that by focusing on Plaintiff's statements about his ability to speak English, "[t]he ALJ conveniently used some minor inconsistencies

15

in the record to discredit not only the evidence that those inconsistencies touched on, but also virtually everything in the record that supports a finding of disability." Br. [#16] at 20.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted); *see also White*, 287 F.3d at 909. "Nevertheless an ALJ's adverse credibility finding 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Mendez v. Colvin*, --- F.App'x ---, 2014 WL 5334027, at *2 (10th Cir. 2014) (quoting *Wilson*, 602 F.3d at 1144). The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must only set forth the specific evidence he relied on in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Therefore, as long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *White*, 28 F.3d at 910; *see also Qualls*, 206 F.3d at 1372; *Casias v. Sec. of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Such deference is warranted on this record.

An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *4 (July 2, 1996); *see also Jimison ex rel. Sims v. Colvin*, 513 F.App'x 789, 795 (10th Cir. 2013) (table decision). However, the ALJ "is not required to 'identif[y] any specific

incredible statements,' so long as the ALJ 'indicat[es] to what extent he credited what [the claimant] said when determining the limiting effect of [the claimant's] symptoms.'" *Bales v. Colvin*, 576 F.App'x 792, 800 (10th Cir. 2014) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1165, 1170 (10th Cir. 2012)) (modifications in original). "[C]ommon sense, not technical perfection, is our guide." *Keyes–Zachary*, 695 F.3d at 1167.

Here, the ALJ gave specific and legitimate reasons for his determination that Plaintiff's testimony was entitled to less than full weight. Tr. 42. For example, the ALJ found that while Plaintiff testified at his hearing that he is unable to sit for two hours, "in September 2010, he told a consultative examiner that he was able to sit for two hours [ ]." Tr. 18. The ALJ further noted that Plaintiff's "actual conduct [wa]s not consistent with [his] own assertions." Tr. 19. The ALJ offered several specific examples:

> In October 2010, the claimant reported that he was unable to perform many activities [ ]. He indicated that he was unable to do household chores due to his pain. However, he indicated that he was able to go grocery shopping if given a list. He also noted that he was able to watch television, converse with his family, and manage his personal care needs. Overall, this report is dramatically more limited than reports the claimant made [ ] two months earlier [ ]. In August 2010, the claimant reported that he was able to prepare simple meals, do light dusting, sweep, and vacuum. He also listed yard work as one of his hobbies, but he did indicate that his pain occasionally limited his ability to perform this activity. Overall, the claimant's August 2010 reports suggest that the claimant was able to perform greater activities than his October 2010 reports, but the medical evidence does not show that the claimant's condition deteriorated during this period. Moreover, the claimant's report that he was able to perform yard work is inconsistent with the severity of symptoms he has reported.

> Additionally, the claimant has reported on several occasions that he is only able to walk for 10 minutes at a time [ ]. However, the claimant has told treating sources that he goes for walks when his pain is not too severe [ ]. Moreover, the claimant reported that he does exercises daily by following an exercise program on the television and that he had a daily stretching routine [ ]. Overall, these activities exceed the limitations alleged by the claimant.

Tr. 19.  The ALJ further noted inconsistencies regarding Plaintiff's testimony that he was in constant pain.  Tr. 20.  As noted by Plaintiff, the ALJ did discuss Plaintiff's allegation that he cannot speak English and evidence in the record regarding Plaintiff's ability to speak English.  Tr. 19-20.  The ALJ concluded that "even though the Claimant's preferred language is not English the claimant is nevertheless able to communicate in English" for a variety of reasons.  Tr. 19.

Contrary to Plaintiff's assertion, it is evident that the ALJ based his credibility determination on a variety of factors, not only on Plaintiff's statements about his inability to speak English.  Further, the Court's independent review of the record shows that the ALJ relied on the evidence in the record in reaching his conclusion that Plaintiff's assertions are not consistent.  *See, e.g.*, Tr. 292 (January 20, 2010 physical therapist examination notes stating that "Pt. reports he does [an] exercise program on the TV daily and sometimes stretches 3 times a day"); Tr. 409 (September 20, 2011 visit to medical doctor when Plaintiff reported that he "goes for walks when not in pain"); Tr. 249 (form completed by Plaintiff on August 18, 2010, noting that Plaintiff can only walk for 10 minutes before needing to stop and rest); Tr. 397 (September 21, 2010 psychological examination when Plaintiff reported that he "does no household chores" but does some grocery shopping and that he is too forgetful to cook meals); Tr. 246-47 (form completed by Plaintiff on August 18, 2010, noting that he prepares his own meals daily, that he does household chores including "light dusting, vacuum[ing], [and] sweeping," that he shops for groceries once or twice a week, and that one of his hobbies is yard work).  Accordingly, the Court is not persuaded that the ALJ erred in rendering his credibility determination.

### C.   Plaintiff's RFC

Plaintiff argues that the RFC the ALJ assigned in this case "is not based on substantial evidence and fails to address all the limitations resulting from his severe and non-severe impairments." *Br.* [#16] at 5, 20-21.  Specifically, Plaintiff maintains that while at step three the ALJ found that Plaintiff "had mild to moderate limitations in concentration, persistence, and pace," the "only restriction related to cognitive functioning or to concentration, persistence, and pace that the ALJ assigned" was that Plaintiff can not engage in work requiring hyper-vigilance. *Id.* at 20.

As noted above, at step two, the ALJ found that Plaintiff "has the following impairments that are medically determinable and "severe": adjustment disorder; posttraumatic stress disorder; neck pain, back, and shoulder pain; headaches; effective disorder; and anxiety disorder . . . ." Tr. 15.  However, the ALJ noted that

> there are some qualifications and/or conditions to the impairments stated
> above.  The impairment of headaches is only questionably medically
> determinable.   That is, the evidence of medical determinability is
> questionable at best.  Consequently, some of the impairments stated above
> will not require or result in a correlative functional limitation in the claimant's
> residual functional capacity.

Tr. 15.  At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 16.  In his more detailed discussion of his step three determination, the ALJ found that "the examination notes do show that the claimant frequently has a depressed mood and/or affect and he has demonstrated some cognitive deficits on mental evaluations." Tr. 16.  Therefore, the ALJ noted that "[t]he

evidence generally suggests that the claimant does have severe limitations in the domains

of social functioning and concentration, persistence, or pace, but the evidence also shows

that the claimant's severe limitations do not reach a marked level." Tr. 16.  The ALJ then

discussed specific evidence in the record:

> The claimant is frequently described as pleasant and cooperative in the treatment notes and his behavior is generally appropriate for the situation. Moreover, the claimant retains relationships with his family members.  In regards to the claimant's concentration, the record shows that he does have some limitations, but he also retains the ability to follow the storyline while watching television and [to] drive.  Both of these activities require significant concentration and are inconsistent with marked limitations in concentration, persistence, or pace.

Tr. 16.  As a result, the ALJ found "that the claimant has moderate limitations in social

functioning and mild to moderate limitations in concentration, persistence, or pace." Tr. 16.

It appears, therefore, that while the ALJ initially stated that the medical records suggested

a severe limitation with regards to concentration, persistence, or pace, after examining the

entirety of the records, he concluded that Plaintiff's limitation in this regard was only mild

to moderate.

After reviewing the information in the record, the ALJ concluded that Plaintiff has the

residual functional capacity ("RFC")

> to perform a full range of light work with the following exceptions.  The [Plaintiff] must never climb ladders, ropes, or scaffolds.  The [Plaintiff] is unable to extend the neck for prolonged periods of time.  The [Plaintiff] must never reach overhead.  The [Plaintiff] must never be exposed to unprotected heights.  The [Plaintiff] is unable to perform assembly-line work.  The [Plaintiff] cannot engage in work requiring hyper-vigilance.  The [Plaintiff] is able to have frequent contact and/or interaction with the public and coworkers.

Tr. 14 (footnotes omitted).

After reviewing the information in the record, the issue here is that Plaintiff believes that because the ALJ found some cognitive

impairments at steps two and three of his assessment, he must explicitly discuss or state those impairments when determining the RFC and explicitly include an accommodation for those impairments in the RFC.  Plaintiff does not provide legal authority for this proposition and the applicable authority does not appear to include such a requirement.  The SSA has made clear that the "RFC assessment must be based on *all* of the relevant evidence in the case record . . . ." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (emphasis in original), however, it does not require the ALJ to explain the RFC in any particular way or to explicitly incorporate his findings at steps two and three into his written RFC.  The SSA's policy states:

> The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

The Southern District of New York recently addressed this question in *Roman Jimenez v. Colvin*, No. 12 Civ. 6001(PGG)(FM), 2014 WL 572721 (S.D.N.Y. Feb. 13, 2014).  That court explained:

> Roman further objects that the RFC finding conflicts with the ALJ's determination at Step Three that she has "marked limitation in concentration, persistence, and pace" and "moderate difficulties" in social functioning. (Pl.'s Mem. at 13 (citing Tr. 17)).  Determinations at Step Three, however, are different than those at Step Four. SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).  As the ALJ noted, limitations identified at Step Three "are not [an RFC] assessment . . . .  The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions." (*Id.* at 17-18 (citing SSR 96-8p)).  In other words, identifying an impairment at Step Three—even a marked impairment—does not define the scope of residual functional capacity.  *See, e.g., Anderson v. Colvin*, No. 12-1102, 2013 WL 1339379, at *6 (10th Cir. Apr. 4, 2013) ("the ALJ was not required to include any of [the doctor's] 'B

> criteria' opinions in his RFC assessment").   The ALJ properly performed the more detailed evaluation, considering and weighing the reports of the treating and evaluating professionals, as well as Roman's own testimony, and concluded that Roman had the RFC to perform [ ] light, unskilled work, limited by certain environmental factors. (Tr. 18).   His prior determinations have no bearing on this finding.

*Id.* at *14.   In addition, the Tenth Circuit recently held that the ALJ was not required to include a doctor's Paragraph B criteria opinions in his RFC assessment because the limitations identified in Paragraph B "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Anderson v. Colvin*, 514 F.App'x 756, 763 (10th Cir. 2013) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)).   Therefore, the Court does not find support for Plaintiff's position and finds that the ALJ did not err by including the limitation that Plaintiff cannot engage in work requiring hyper-vigilance as the only limitation relating to Plaintiff's concentration, persistence, or pace impairment, which the ALJ found to be only mild to moderate.   Tr. 18.

Plaintiff further argues that the ALJ made "speculative inferences from medical reports" and "made strained inferences from scant evidence and used those inferences to discredit all of the medical evidence."   Br. [#16] at 21.   Plaintiff does little to legally substantiate his argument beyond offering a sweeping argument that "[w]hile there are conflicting medical opinions as to the cause of [Plaintiff's] impaired cognitive functioning, there are no conflicts in the evidence that [Plaintiff] suffers from it."   Br. [#16] at 21.   Plaintiff then states that the ALJ "found that [he] could return to jobs that were semi-skilled, so reduced cognitive functioning would greatly impact their performance."   *Id.*   It is unclear to the Court exactly what Plaintiff's argument is and the Court "is under no obligation to make

[P]lainitff's arguments for" him.  *Carter v. Colvin*, --- F.Supp.2d ---, 13-cv-00504-REB, 2014 WL 1096906, at *5 n.12 (D. Colo. March 20, 2014); *see also Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for him.").  To the extent Plaintiff is asking the Court to reweigh the evidence, that is not the Court's role.  *Hackett*, 395 F.3d at 1173. To the extent Plaintiff is arguing that the ALJ erred in concluding that he could perform past relevant work as an electronics assembler and manicurist, that issue is addressed below.

## D.  Plaintiff's Ability to Perform Past Relevant Work

Finally, Plaintiff argues that "the ALJ erred by concluding that [Plaintiff] could perform his past relevant work when that work requires skills and abilities that are restricted in [Plaintiff's] RFC and the ALJ made insufficient findings of fact to support this conclusion." Br. [#16] at 5, 21-23.  Plaintiff offers three main arguments in this section of his brief.  First, he argues that the ALJ committed error when he took administrative notice that the Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations ("SCO") were promulgated a number of years ago and have not been updated subsequent to publication and, therefore, relied on and accepted the VE's testimony and opinion with regard to any discrepancies between the VE's opinion and the DOT.  *Id.* at 22.  Second, Plaintiff argues that the ALJ did not make specific findings of fact regarding the two previous positions he found Plaintiff could perform.  *Id.* at 23.  Third, Plaintiff maintains that his past relevant work conflicts with the limitations set forth in his RFC.  *Id.* at 23.

Notably, at step four, when the ALJ considers whether Plaintiff can perform past relevant work, "it is [P]laintiff's burden to show [ ]he cannot perform h[is] particular former occupation or h[is] former occupation as generally performed throughout the national

economy." *Medina v. Barnhart*, 68 F.App'x 890, 893 (10th Cir. 2003) (table decision) (citing *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993)); *cf.* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find you are not disabled."); 20 C.F.R. § 404.1560(b)(2) ("a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.").

At the hearing, Plaintiff testified that he worked at an electronics company for approximately 11 or 12 years and that subsequently he owned a nail salon. Tr. 44-45. Plaintiff further testified that he performed manicures. Tr. 45-46. Based on the record, the VE testified that Plaintiff's past relevant work consisted of work as an electronics assembler, a semi-skilled job with an SVP[9] of 4 and a light level of exertion, but that Plaintiff previously performed the job at a medium level of exertion. Tr. 56-58. The VE also testified that Plaintiff previously worked as a manicurist, a semi-skilled job with a SVP of 3 that was sedentary, but that Plaintiff performed the job at a medium level of exertion. Tr. 58, 60. The Court's review of the DOT shows that the VE's description of these jobs conforms with the DOT. *See* DICOT 726.684-018, 1991 WL 679596 (definition of electronics assembler, which has an SVP of 4 and is defined as "light work"); DICOT 331.674-010, 1991 WL 679596 (definition of manicurist, which has an SVP of 3 and is

---

[9] "SVP" stands for "specific vocational preparation" and is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, App. C.II., 1991 WL 688702 (4th ed.1991).

defined as sedentary work).

Regarding Plaintiff's first argument, it was not error for the ALJ to rely on the VE's testimony and opinion at the hearing.  At the hearing, the ALJ asked the VE to assume an individual with the same RFC he assigned to Plaintiff in this case.  Tr. 60-61.  The VE testified that such an individual could perform Plaintiff's past work as a manicurist as it is customarily performed or as an electronics assembler as it is customarily performed.  Tr. 61.  The VE explained that due to the limitation that the individual could not perform assembly line work there would be approximately "50 percent erosion" of the number of electronics assembler jobs, but that there would still be approximately 180,000 such jobs nationally.  Tr. 61-62.  However, the number of jobs is irrelevant at step four.  20 C.F.R. § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.").

The ALJ is required to accept and include in the hypothetical posed to the VE only those functional limitations that are supported by the record, and are included in the RFC. *See Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (hypothetical question need only include impairments that are accepted by the ALJ).  Because the ALJ included in his hypothetical question all of the limitations set forth in the RFC, the VE's testimony elicited by that hypothetical question constitutes substantial evidence to support the denial of disability benefits and supplemental security income payments to Plaintiff.  *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).  Nothing about the VE's testimony indicated that the information she

provided about Plaintiff's past relevant work conflicted with the DOT or the SCO.

However, in his Decision, the ALJ included what appears to be a general disclaimer

regarding any potential conflicting information:

> I note that portions of the testimony of the VE may have differed from the information contained in government publications such as the [DOT] and the [SCO]. I take administrative notice that the DOT and SCO were promulgated a number of years ago, and that these publications have not been revised or updated to reflect changes in the labor market subsequent to publication. I also take administrative notice that the VE has access to occupational and vocational information that is different from, more current than, or not even contained in, the DOT and the SCO. Thus, I find that the testimony of the VE was based upon current occupational and employment data in the regional and national economy as well as the VE's own knowledge, experience, and analysis of the current labor market. Consequently, I find that the evidence given by the VE in this hearing is reasonable and supportable. I therefore accept and rely upon the VE testimony rather than any conflicting portions of the DOT and/or the SCO.

Tr. 28-29 (footnote omitted). This disclaimer does not mean that the testimony the VE

provided about Plaintiff's past relevant work did in fact conflict with the DOT and, as noted

above, the testimony does not appear to conflict with the DOT.

However, because conflicts regarding occupational information have arisen in many

cases, the SSA issued a policy interpretation ruling on December 4, 2000 explaining how

such conflicts should be treated:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis

for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704, at *2.  The ruling also clarifies that

> [t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

*Id.* at *3.  An ALJ is required to explain the conflict and how he resolved the conflict in his decision.  *Id.* at *4.  Here, there does not appear to be a conflict with regard to the VE's testimony regarding Plaintiff's past relevant work and the ALJ seems to have included his disclaimer either as a precaution or to address other information provided by the VE. Therefore, to the extent Plaintiff argues that the ALJ erred by including this disclaimer, the Court finds Plaintiff's argument meritless.  Further, while the ALJ did not explicitly ask the VE whether his testimony conflicted with the DOT, because there does not appear to be a conflict here, any such error was harmless.  *Strickland v. Astrue*, 496 F.App'x 826, 834 (10th Cir. 2012) (table decision) ("Simply put, because there are no conflicts, the error was harmless.") (citing *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) ("Because there were no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless.")).

Plaintiff's second argument, that the ALJ did not make specific findings of fact regarding the two previous positions he found Plaintiff could perform, Br. [#16] at 23, is easily dispatched.  The above analysis makes clear that the ALJ elicited testimony from Plaintiff about his previous work experience and then also asked the VE about Plaintiff's past relevant work.  Tr. 44-46, 56-58.  After doing so, the ALJ asked the VE multiple hypotheticals regarding potential impairments.  Tr. 60-62.  In his written Decision, the ALJ

27

explained Plaintiff's past relevant work, the hypothetical he asked the VE that assumed the RFC he found in this case, and the VE's testimony.  Tr. 28.  The ALJ then explicitly "accept[ed] and rel[ied] upon the VE testimony" to support his conclusion.  Tr. 29.  While the ALJ's discussion is brief, the ALJ's acceptance of the VE's testimony was not improper. To the contrary, the VE's testimony constitutes substantial evidence to support the denial of disability benefits and supplemental security income payments to Plaintiff.  *See Decker*, 86 F.3d at 955; *Lately v. Colvin*, 560 F.App'x 751, 755 (10th Cir. 2014) (table decision) (finding that the VE's testimony was "substantial evidence supporting the ALJ's conclusion").  Therefore, the Court does not find support for Plaintiff's argument that the ALJ made no findings of fact about Plaintiff's past jobs and finds that the ALJ did not err in this regard.

Finally, Plaintiff's third argument is that the past relevant work conflicts with Plaintiff's RFC.  Plaintiff argues that "[o]n its face, the job of electronics assembler would appear to involve assembly line work . . . ."  Br. [#16] at 23.  The DOT's definition of electronics assembler does not state that this position requires assembly line work.  *See generally* DICOT 726.684-018, 1991 WL 679596 (definition of electronics assembler).  To the contrary, this job may include tasks such as reading work orders, tending machines that make components, mounting assembled components, and a variety of other tasks.  *Id*.  In addition, because the ALJ was aware that some of the tasks an electronics assembler might be asked to do would require assembly line work, which he specified in the RFC Plaintiff could not do, he asked the VE if there were electronics assembler positions that did not require assembly line work.  Tr. 61.  The VE testified that there were approximately 180,000 electronics assembler jobs nationally that do not require assembly line work.  Tr.

61-62.

Plaintiff further argues that the ALJ was required to "inquire about [Plaintiff's] duties as an electronics assembler and make findings of fact regarding how those duties compare and contrast with his RFC restrictions." Br. [#16] at 23. Plaintiff is correct that the ALJ "must make findings regarding the physical and mental demands of the claimant's past relevant work." *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996); *see also Ferrill v. Astrue*, 486 F.App'x 711, 712 (10th Cir. 2012) (table decision). Here, the only specific hearing testimony provided by Plaintiff about his past work as an electronics assembler is that he "worked in the warehouse" and "picked orders and [ ] did assembly work." Tr. 54. However, the VE and the ALJ also relied on the form submitted by Plaintiff that provided more detailed information about his work at Arrow Electronics. *See, e.g.*, Tr. 58 (VE testimony regarding past job as electronics assembler: "As actually performed he indicated that he lifted 50 pounds so it would be up into the medium exertional level."); *cf.* Tr. 60 (VE testimony regarding past job as manicurist: "He did indicate that he crouched four hours and that he lifted 50 pounds. So with that it would not be sedentary. I would change it to medium."). That form provided information about both the mental and physical requirements of his job. For example, as an electronics assembler Plaintiff walked for up to six hours per day, stood for up to four hours per day, sat for up to two hours per day, climbed for up to two hours per day, handled objects for up to four hours per day, frequently lifted up to 50 pounds, and used technical knowledge or skills. Tr. 231. Based on this information provided by Plaintiff, the VE provided testimony about Plaintiff's past relevant work. Tr. 57-58, 60.

While *Winfrey* makes clear that the ALJ must "make findings regarding the physical

and mental demands of the claimant's past relevant work," *Winfrey*, 92 F.3d at 1024, it does not specifically require that all such findings must be based on Plaintiff's testimony at the hearing.  In addition, 20 C.F.R. § 404.1560(b)(2) states that "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  Here, the ALJ made findings at the hearing based on Plaintiff's testimony, a document in the record, and the VE's testimony.  He then posed a hypothetical to the VE that included the restrictions of Plaintiff's RFC and the VE testified that the hypothetical individual could perform the job of "electronics assembler as is customarily performed."[10] Tr. 61.  The VE's testimony elicited by that hypothetical question constitutes substantial evidence to support the denial of disability benefits and supplemental security income payments to Plaintiff. *See Decker*, 86 F.3d at 955.  Accordingly, based on the hearing testimony and the record, the ALJ found that Plaintiff was not disabled.  Tr. 28-29; *see* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find you are not disabled.").

---

[10]  The Court notes that the VE testified that Plaintiff could perform the job of electronics assembler as it is customarily performed, not as he previously performed it.  Tr. 61.  As noted above, at step four, when the ALJ considers whether Plaintiff can perform past relevant work, "it is [P]laintiff's burden to show [ ]he cannot perform h[is] particular former occupation or h[is] former occupation *as generally performed throughout the national economy*." *Medina*, 68 F.App'x at 893 (citation omitted and emphasis added); *cf.* 20 C.F.R. § 404.1560(b)(2) ("a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it *or as generally performed in the national economy*." (emphasis added)).  This is important because Plaintiff previously performed this job at a higher exertion level than that noted in the DOT. Tr. 28, 231.

Accordingly, the Court finds that the ALJ did not err in this regard.

Because a claimant will be found not to be disabled if he can perform any past relevant work, and the Court affirms the ALJ's determination that Plaintiff could perform his past job of electronics assembler, the Court need not consider Plaintiff's arguments that the ALJ "made no specific findings regarding the position of manicurist . . . ." Br. [#16] at 23.

### IV.  Conclusion

The record contains substantial evidence from which the ALJ concluded that Plaintiff was not entitled to benefits under the Act during the time relevant to this case.  The ALJ's decision was based upon substantial evidence and is free of reversible legal error. Accordingly,

IT IS HEREBY **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  January 12, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge